IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUSSELL LAWSON and
MICHELLE LAWSON,

        Plaintiffs,

     v.

PALM HARBOR HOMES, INC. and
HOMES DIRECT OF OREGON LLC,

        Defendants.

Case No. 6:21-cv-00212-MC

**OPINION AND ORDER**

**MCSHANE, District Judge**:

Plaintiffs Russell and Michelle Lawson bring this action against Defendants Palm Harbor Homes, Inc. ("Palm Harbor") and Homes Direct of Oregon LLC ("Homes Direct") arising out of the sale of a manufactured home. Pls.' First Am. Compl., ECF No. 5 ("FAC"). Plaintiffs bring claims for violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, and the Oregon Unfair Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.605, against both Defendants, and for breach of contract against Homes Direct.[1] FAC ¶¶ 14–24. Defendants move for summary judgment on all claims. Def. H.D.'s Mot. Summ. J., ECF No. 34; Def. P.H.'s Mot. Summ. J., ECF No. 36. Because Plaintiffs failed to show that either Defendant willfully violated the UTPA, summary judgment is GRANTED as to those claims. Summary judgment is DENIED as to Plaintiffs' MMWA and breach of contract claims.

---

[1] Plaintiffs moved to amend their Complaint to add a breach of contract claim against Palm Harbor based on its alleged breach of warranty. Pls.' Mot. Amend Compl., ECF No. 28.

1 – OPINION AND ORDER

**BACKGROUND**

Plaintiffs are residents of Union County, Oregon, who purchased a custom manufactured home from Homes Direct in September 2019. FAC ¶ 6. Palm Harbor constructed the home and provided a limited one-year warranty to Plaintiffs. FAC ¶ 6; Smith Decl. Ex. F, ECF No. 37. Homes Direct is an independent retailer that sells Palm Harbor homes to customers.[2] Smith Decl. Ex. C, at 3–4. Under its sales contract with Plaintiffs, Homes Direct agreed to deliver the home to Plaintiffs, set the home on its foundation, and arrange the set-up of the home with hired subcontractors who would perform all the necessary work to make the home move-in ready.[3] FAC ¶ 9. Upon completion of the "close-up" work and before Plaintiffs are permitted to move into the home, Homes Direct and Plaintiffs are to conduct a walk-through of the home to identify any work to still be completed. Smith Decl. Ex. 4, at 3, ECF No. 35.

Homes Direct delivered the home in March 2020 but was unable to set the home on the foundation, resulting in the home being left on the street until mid-April 2020. FAC ¶ 8. Since April 2020, Homes Direct has hired three contractors to finish the close-up of the home. Homes Direct first hired All in One Construction, but both Homes Direct and Plaintiffs were dissatisfied with the quality of their work. Lawson Decl. Ex. F, at 11–12, 14, ECF No. 40. Homes Direct then hired North End Construction, a company Plaintiffs found, but Homes Direct terminated them after they began performing work outside the scope of the close-up work. *Id.* at 17–18.

---

[2] The relationship between Palm Harbor and Homes Direct was not clearly developed in the record. The Homes Direct sales lot is directly across the street from Palm Harbor and they offer factory tours. Home Direct, with the Palm Harbor logo featured prominently on its web page, represents that it is "THE Factory Direct store for Palm Harbor Homes here in Millersburg." By way of asterisk, it asserts it is an "independent retailer." Finally, despite the Defendants having different and arguably competing financial interests in the outcome of this case, they share the same legal counsel. All these facts will be developed at trial and will go toward what was known or not known by Palm Harbor with regard to the home in question.

[3] The close-up work specified in the sales contract includes the following: "blocking and leveling of the home on [the] foundation, standard exterior end wall close up, interior tape & texture close, door adjustments, carpet installation and construction clean of home." Smith Decl. Ex. 4, at 5.

Homes Direct next hired contractor Mark Zinsli, who stated it was an "extensive job" but had an estimated three to four days remaining to complete the close-up work. *Id.* at 19–20. However, after Zinsli drove onto Plaintiffs' yard and made large tracks with his truck, Plaintiffs asked him to leave the property. *Id.* Ex. H. To date, the close-up work is incomplete, the walk-through has not been conducted, and Plaintiffs have yet to move into the home. FAC ¶¶ 11–12; Pls.' Resp. Def. H.D.'s Mot. 2–4, ECF No. 41.

Plaintiffs describe the home as having "cracks running throughout the walls . . ., improperly installed doors, broken tile, and misaligned cabinets." Pls.' Resp. Def. H.D.'s Mot. 8. Plaintiffs submitted copies of emails to show that Homes Direct was aware of those alleged defects. *See* Lawson Decl. Exs. B–C. In an email between Stuart White of All in One Construction and Norm Roach of Homes Direct, White stated that "[t]here is a lot of work in that home sir form [sic] factory work to just drywall but will handle it all for you." *Id.* Ex. B. In another series of emails, Homes Direct puts Palm Harbor in touch with subcontractors to coordinate an order of materials for the home. *Id.* Ex. C.

Plaintiffs bring this action, alleging that Defendants breached their express warranties and implied warranties of merchantability and fitness for a particular purpose in violation of the MMWA, committed several unlawful trade practices in violation of the UTPA, and that Homes Direct failed to complete the close-up of the home in breach of its sales contract with Plaintiffs. FAC ¶¶ 14–24.

## **STANDARD OF REVIEW**

The Court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v.*

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The Court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. at 247–48. Rather, the non-moving party must proffer evidence that could reasonably affect the outcome of the suit. *Miller*, 454 F.3d at 988.

## DISCUSSION

Defendants move for summary judgment on Plaintiff's MMWA, UTPA, and breach of contract claims. The Court addresses the claims against Palm Harbor followed by Homes Direct.

### I. Palm Harbor

#### A. Magnuson-Moss Warranty Act

Plaintiffs allege that Palm Harbor violated the MMWA "by failing to comply with [its] obligations under its written warranty and for breaching the implied warranties of merchantability and fitness for a particular purpose." FAC ¶ 19. Palm Harbor argues that "Plaintiffs failed to provide [] the statutorily required notice and opportunity to cure" the alleged warrantied defects. Def. P.H.'s Mot. 5. Plaintiffs maintain they did provide Palm Harbor with notice and a reasonable opportunity to cure because Homes Direct and its subcontractors were acting as Palm Harbor's agents, and those agents had notice and an opportunity to cure. Pls.' Resp. Def. P.H.'s Mot. 5–7, ECF No. 39. Palm Harbor responds that Plaintiffs failed to establish agency. Def. P.H.'s Reply Supp. Mot. Summ. J. 3, ECF No. 43.

4 – OPINION AND ORDER

The MMWA creates a federal private cause of action for a warrantor's failure to comply with the terms of a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1). But "[n]o action . . . may be brought . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure." *Id.* § 2310(e). Additionally, a MMWA claim based on a breach of warranty is determined under state warranty law. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008). Under Oregon warranty law, a buyer must notify the seller of any breach within a reasonable time. Or. Rev. Stat. § 72.6070(3)(a); *see also Parkinson v. Novartis Pharms. Corp.*, 5 F. Supp. 3d 1265, 1276–77 (D. Or. 2014); *Redfield v. Mead, Johnson & Co.*, 512 P.2d 776, 781 (Or. 1973).

The Court finds that Plaintiffs raised genuine issues of material fact regarding whether Palm Harbor was afforded notice and an opportunity to cure alleged manufacturer defects. Namely, there is conflicting evidence concerning Palm Harbor's knowledge of the issues with Plaintiffs' home and whether Homes Direct had authority to act on Palm Harbor's behalf to cure defects. "Apparent authority to do any particular act can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter." *Taylor v. Ramsay-Gerding Const. Co.*, 196 P.3d 532, 536 (Or. 2008) (quoting *Wiggins v. Barrett & Assocs., Inc.*, 669 P.2d 1132 (1983)). "Additionally, the third party must 'rely on that belief' when dealing with the agent." *Id.*

Plaintiffs admit that they did not notify Palm Harbor of any manufacturer defects before filing this lawsuit, Smith Decl. Ex. B, at 10, which Palm Harbor argues is direct evidence that defeats their MMWA claim for lack of notice, Def. P.H.'s Mot. 5. But Plaintiffs counter with

enough circumstantial evidence to support an inference that Palm Harbor was aware of the defects and acted through Homes Direct and subcontractors to cure the defects. For example, the emails between Palm Harbor, Homes Direct, and subcontractors show Palm Harbor employees communicating directly with subcontractors about what materials were needed for the home and where the items could be picked up. Lawson Decl. Ex. C. A Homes Direct employee on the email chain states she is the "middle man," simply helping put Palm Harbor in touch with the subcontractors. *Id.* at 1. A subcontractor informed Homes Direct that a lot of work is needed on the home, including factory work that would be Palm Harbor's responsibility, and that he would complete it all. *Id.* Ex. B; Ex. F, at 25. Norm Roach, former manager of Homes Direct, explained that sometimes the subcontractors will find and fix manufacturer issues as part of the close-up process, and Homes Direct will bill Palm Harbor for the work.[4] Pls.' Resp. Def. P.H.'s Mot. 5.

The evidence further shows that Plaintiffs reasonably relied on Homes Direct as an agent of Palm Harbor to fix any defects in the home. Plaintiffs were copied on the email between the subcontractor and Homes Direct regarding the extensive amount of work, including manufacturer work, to be done on the home. Russell Lawson Decl. ¶8, Ex. B. When asked whether he spoke with anyone at Palm Harbor when he walked through their showroom, Plaintiff Russell Lawson responded that he spoke with Norm Roach, a Homes Direct employee. Smith Decl. Ex. 3, at 5. Palm Harbor argues that it has an entirely separate warranty from Homes Direct, which instructed Plaintiffs to notify Palm Harbor in writing of any manufacturer defects at the address provided. *See* Def. P.H.'s Reply 4. The warranty, however, does not provide an address for Palm Harbor, and it states that in emergency situations, "[t]he retailer is the closest representative." Smith Decl. Ex. F. The record shows that Plaintiffs relied on Homes Direct to

---

[4] Plaintiffs cite to pages of deposition testimony that are missing from the record, so the Court relies on the quoted excerpts from Plaintiffs' briefing.

cure any defects in the home, and based on the close relationship between Homes Direct and Palm Harbor, their reliance was reasonable.

Viewing these facts in the light most favorable to Plaintiffs, a trier of fact could reasonably infer that Palm Harbor was aware of defects in Plaintiffs' home, and that Palm Harbor gave Homes Direct authority to act on its behalf in curing those defects. Because genuine issues of material fact exist regarding whether Palm Harbor received notice and an opportunity to cure, Palm Harbor's Motion for Summary Judgment is DENIED as to Plaintiffs' MMWA claim.[5]

### B. Oregon Unlawful Trade Practices Act

Plaintiffs allege that Palm Harbor willfully violated several provisions of the Oregon Unlawful Trade Practices Act: subsections 646.608(1)(e), 646.608(1)(g), 646.608(1)(t), 646.608(1)(q).[6] FAC ¶ 15. At the outset, Plaintiffs' claim under subsection 646.608(1)(q) for failure to deliver goods or services within a certain period of time fails because Palm Harbor had no part in promises made regarding the delivery of the home. *See* Def. P.H.'s Mot. 7. For the remaining claims brought under the UTPA, Plaintiffs allege that Palm Harbor's model home, as seen on Homes Direct's sales lot, was a negligently provided implied representation regarding the quality of home that Plaintiffs would receive, and negligence suffices to show willfulness.[7] Pls.' Resp. Def. P.H.'s Mot. 8. Palm Harbor argues that Plaintiffs provide no evidence that Palm Harbor willfully made false representations. Def. P.H.'s Reply 6.

---

[5] To the extent that Palm Harbor relies on the same arguments for Plaintiffs' breach of contract claim against Palm Harbor, summary judgment would fail for the same reasons.

[6] Plaintiffs concede allegations brought under subsections 646.607(2) and 646.608(1)(u). Pls.' Resp. Def. P.H.'s Mot. 8, 10.

[7] Plaintiffs rely on *State ex rel. Redden v. Discount Fabrics, Inc.*, 615 P.2d 1034 (Or. 1980), to argue that allegations of negligence are sufficient to raise a genuine issue of fact as to willfulness, but that is an incorrect reading of that authority, which instructs that to show willfulness the plaintiff's burden of proof at trial is the same as negligence, i.e., a preponderance of the evidence.

7 – OPINION AND ORDER

The Oregon Unlawful Trade Practices Act is a "comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 21 (Or. 2015). "A person engages in an unlawful practice if in the course of the person's business . . . the person" willfully employs any of the prohibited practices enumerated in section 646.608(1) of the Oregon Revised Statutes. *See also* § 646.638(1). A person commits a willful violation when the person knows or should know that the conduct violates the UTPA. § 646.605(10). To prevail on a UTPA claim involving a misrepresentation, a plaintiff must show that at the time the defendant made the representation, he knew or should have known that it was false. *See Rathgeber v. James Hemenway, Inc.*, 69 P.3d 710, 715 (Or. 2003).

Here, Plaintiffs present no evidence showing that Palm Harbor knew or should have known that, at the time Plaintiffs saw the model home, Palm Harbor was making false implied representations regarding the quality of the home Plaintiffs would receive. Nothing in the record shows specific conduct by Palm Harbor from which the Court could infer willful misrepresentation. The presence of a model home on Homes Direct's sales lot, without more, is not enough to defeat summary judgment. Palm Harbor's Motion for Summary Judgment is therefore GRANTED as to Plaintiffs' UTPA claims.

**II. Homes Direct**

**A. Magnuson-Moss Warranty Act and Breach of Contract**

Plaintiffs allege that Homes Direct violated the MMWA "by failing to comply with [its] obligations under its written warranty and for breaching the implied warranties of merchantability and fitness for a particular purpose." FAC ¶ 19. Plaintiffs bring a breach of contract claim against Homes Direct based on Homes Direct's failure to make the home move-in ready. FAC ¶ 23. Homes Direct argues both Plaintiffs' MMWA and breach of contract claims

fail because Plaintiffs have no admissible evidence of damages to demonstrate the amount of their ascertainable loss. Homes Direct further claims that an expert is necessary to explain the extent of repairs, and Plaintiffs failed to disclose or provide an expert report. Def. H.D.'s Mot. Summ. J. 9–10. Plaintiffs maintain that their damages include the cost to repair the home, and the two bids from contractors enumerating the needed repairs are admissible evidence sufficient to prove damages. Pls.' Resp. Def. H.D.'s Mot. 16.

To succeed on an MMWA claim, the buyer must establish a breach of warranty and the amount of the alleged damage. *See* Or. Rev. Stat. § 72.6070(4); *State ex rel. Hawkins-Hawkins Co. v. Travelers Indem. Co.*, 442 P.2d 612, 613 (Or. 1968). Similarly, for breach of contract, a "plaintiff must allege the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff.'" *Slover v. Oregon State Bd. Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996).

The Court finds Plaintiffs' contractor bids sufficient to show damages for summary judgment purposes. The bids show line-by-line repair items for the home along with their individual cost. FAC, Ex. A. Any issues regarding the admissibility of the bids can be resolved at trial. For instance, even if Defendants are correct and the bids are inadmissible as evidence, Plaintiffs remain free at trial to call the contractors who prepared the bids to lay a foundation and explain how they arrived at their estimates. The Court is unconvinced that an expert is necessary to explain the repairs and their associated costs. Because Plaintiffs have met their summary judgment burden concerning damages, Homes Direct's Motion for Summary Judgment is DENIED as to Plaintiffs' MMWA and breach of contract claims.

**B. Oregon Unlawful Trade Practices Act**

Plaintiffs allege that Homes Direct willfully violated several provisions of the Oregon Unlawful Trade Practices Act: subsections 646.608(1)(e), 646.608(1)(g), 646.608(1)(t), 646.608(1)(q).[8] FAC ¶ 15. Like their UTPA claims against Palm Harbor, Plaintiffs fail to show that Homes Direct willfully committed the alleged conduct constituting Plaintiffs' UTPA claims. Specifically, there is no evidence that Homes Direct knew or should have known its representations or promises were false at the time they were made. The record instead reflects an apparent unusual challenge in finding and maintaining a contractor to complete the close-up of Plaintiffs' home. Because the record is devoid of evidence of willful misrepresentation by Homes Direct, Plaintiffs' UTPA claims under subsections 646.608(1)(e) and (g) fail. *See Rathgeber*, 69 P.3d at 715.

Regarding their claim under subsection 646.608(1)(t), Plaintiffs fail to present evidence showing that Homes Direct willfully failed to disclose a material defect of nonconformity. Plaintiffs were told to expect defects incurred from transportation and Plaintiffs were included in the emails between Homes Direct and the subcontractors discussing the work that was still needed to complete the close-up of the home. Those facts belie any alleged willful nondisclosure concurrent with the tender or delivery of the home.

Finally, Plaintiffs fail to raise a genuine issue of material fact regarding Homes Direct's intent not to deliver the home when allegedly promised, an element of Plaintiffs' UTPA claim under subsection 646.608(1)(q). Even if Homes Direct did promise to deliver the home by December 2019, Plaintiffs present no evidence to support their allegation that Homes Direct did not intend to fulfill that promise at the time it was made. Plaintiffs' assertion of that Homes

---

[8] Plaintiffs concede allegations brought under subsections 646.607(2) and 646.608(1)(u). Pls.' Resp. Def. H.D.'s Mot. 6, 15.

Direct failed to deliver on its promise, on its own, is not enough to defeat summary judgment. Homes Direct's Motion for Summary Judgment is therefore GRANTED as to Plaintiffs' UTPA claims.

## CONCLUSION

For these reasons, Palm Harbor's Motion for Summary Judgment (ECF No. 36) and Homes Direct's Motion for Summary Judgment (ECF No. 34) are both GRANTED in part and DENIED in part as stated above.

**IT IS SO ORDERED.**

DATED this 30th day of December, 2022.

_____/s/ Michael McShane_____

Michael McShane
United States District Judge